ORTIZ, APPELLANT, v. MUÑOZ, MAYOR OF GUAYAMA, RESPONDENT.

APPEAL from the District Court of Guayama.

No. 973.—Decided June 25, 1913.

MANDAMUS. — *Mandamus* is an action or judicial proceeding of a civil nature, extraordinary in the sense that it can be maintained only when there is no other adequate remedy, prerogative in its character to the extent that the issue of both the alternative and peremptory command is discretionary, to enforce only clear legal rights, and to compel courts to take jurisdiction or proceed in the exercise of their jurisdiction or to compel corporations, public and private, and public boards, commissions, or officers, to exercise their jurisdiction or discretion and to perform ministerial duties, which duties result from an office, trust, or station, and are clearly and peremptorily enjoined by law as absolute and official.

ID.—MUNICIPAL ORDINANCE—BUTCHER'S LICENSE—AUTHORITY OF MAYOR—DIS-CRETION.—In this case it was shown that there was in force a municipal ordinance which empowered the mayor to issue and revoke licenses of butchers working as such in the city market; that under the provisions of said ordinance the petitioner applied for and obtained a license; that he began to work and did work as a butcher; that while so engaged he was accused of selling meat short in weight; that the mayor, after an official investigation at which the petitioner who had been summoned, appeared, found the latter guilty and revoked his license, from which action of the mayor the petitioner took no appeal whatever; that some days thereafter the petitioner asked the mayor to renew his license on the ground that he had been acquitted by the municipal court of the same offense with which he had been charged before the mayor. The mayor refused to do so. Thereupon the petitioner applied for a writ of *mandamus* to compel the mayor to renew his license. It was held:

1. That the validity or nullity of the ordinance was not involved in the proceeding because the petitioner himself had accepted its provisions and by his acts acknowledged its validity.

2. That the judgment of the municipal court served to acquit the accused and to free him from all criminal responsibility, but the mayor was under

no absolute obligation to substitute the opinion reached by him after a direct examination of the evidence introduced in the administrative investigation by that of the municipal judge.

3. That it was not shown that the mayor abused his discretion.

4. That the trial court did not err in refusing to issue the writ of *mandamus.*

SHORT-WEIGHT SCALES.—Under an ordinance prescribing penalties for using incorrect scales, the fact that said scales became out of balance because wrong pans were put in them after washing, constitutes no valid defense. *City of New York v. Biffle,* Kerr's Penal Code, par. 553.

The facts are stated in the opinion.

*Mr. C. Domínguez Rubio* for appellant.

*Mr. José C. Ramos* for respondent.

MR. JUSTICE DEL TORO delivered the opinion of the court.

Modesto Ortiz made application to the District Court of Guayama for a writ of *mandamus,* alleging substantially as follows:

1. That the plaintiff is by trade a butcher.

2. That the defendant is the mayor of the municipal corporation of Guayama.

3. That among the ordinances of the municipality of Guayama there is one which was approved in February, 1911, and recently amended notwithstanding the fact that it is being litigated, the pertinent part of which reads as follows:

"The mayor is hereby authorized to issue the corresponding license when the application is accompanied by a certificate of good health from the health officer, by a recommendation as to the fitness of the applicant and by a bond executed by two creditable sureties who are taxpayers and owners of real estate to the value of one hundred dollars excluding property exempt from execution, said bond shall be approved by the mayor and shall be for an amount sufficient to guarantee indemnity for any damage which the applicant may cause to the meat-stand or to the tools and implements therein belonging to the municipality. The petition, the recommendation and the bond must be signed by the respective parties before the municipal secretary or some other official authorized by law to take acknowledgments."

4. The said ordinance which refers to the qualifications

exacted of persons who wish to work as butchers contains another section reading as follows:

"No person who is not provided with a license for that purpose shall occupy any position in the municipal slaughter-house or at the stands for the sale of meats."

5. That the petitioner, desirous of working at his trade, presented to the defendant, in accordance with the municipal ordinance referred to and in the form required thereby, an application accompanied by the health certificate and received the following letter in reply:

"Guayama, P. R., December 21st, 1912. Mr. Modesto Ortiz, City. Sir: In answer to your petition of the 20th instant, the mayoralty hereby confirms its former communication regarding your application to reoccupy a butcher's stand in the municipal market, and informs you for the second time that it has nothing to add to its decision in the proceedings had by reason of your having sold short-weight meat to a resident of this city, a copy of which decision was duly sent you. Respectfully, José Muñoz Vázquez, Mayor."

6. That it is false that the petitioner sold meat which was short in weight; that the petitioner was charged with this offense before the municipal court and his license was revoked, but he was acquitted by the said court; that the complaint was filed by an employe of the municipality with the sole and malicious object of preventing the petitioner from selling meat belonging to Miguel Truyol.

7. That the petitioner desires to engage in the exercise of his trade and has no other means of securing a license than by a writ of *mandamus.*

The District Court of Guayama granted the writ applied for alternatively and the defendant answered substantially as follows:

1. That the petition did not contain facts sufficient to constitute a cause of action.

2. That the petitioner has an adequate remedy at law

either in the ordinary action provided for by section 93 of the municipal law or by an action for damages.

3. That on November 23, 1912, the defendant mayor of the city of Guayama in his official capacity received a complaint against the petitioner, Modesto Ortiz, made by the inspector of the public market belonging to the municipality, accusing said Modesto Ortiz of having sold short-weight meat to a certain person, and in view thereof the defendant, by virtue of the power vested in him by section 3 of the ordinance in force on that date, proceeded to make the proper official investigation, for which purpose the accused and the witnesses against him were summoned and appeared. After all the legal requirements had been complied with, the defendant was convinced of the truth of the charge which gave rise to the investigation and therefore removed the petitioner, Modesto Ortiz, permanently from his position as butcher in the municipal market of this city, revoking the license granted said petitioner by the mayoralty of Guayama authorizing him to practice his trade as butcher; that the interested party was formally notified of said decision.

4. That section 3 of said ordinance in force at the time of said investigation empowered the defendant mayor to revoke such licenses at any time for reasons which he might deem sufficient for the betterment of the service, thus conferring upon him in his official capacity as mayor of Guayama a discretional, quasi-judicial power which the defendant exercised in the case complained of by the petitioner in a proper and befitting manner and according to law.

5. That the power to revoke the license conferred by said section 3 of the ordinance then in force implies the right to refuse a new license for the same reason which formed a basis for revoking the original license; that the plaintiff or petitioner accepted the butcher's license which was revoked, as alleged in paragraph 3 hereof, subject to the condition that the same might be revoked at any moment for reasons which might be deemed necessary for the good of

the service, and that he is now estopped from objecting to the revoking thereof or to the refusal of a new license on the same grounds that caused its revocation.

6. Defendant further alleges that in any event when the petitioner filed his new application on the 20th instant, sections 2 and 3 of the ordinance entitled "Ordinance to regulate the service of employes in the butchering of beeves and sale of meat in the slaughter-house and municipal market," approved by the municipal council on February 18, 1911, had been amended and said amendments were then in force. Section 2 has been quoted in summarizing the allegations of the petitioner and section 3 reads as follows:

"The license shall be for a period of 30 days and the mayor is empowered to revoke the same at any time or to refuse to issue another in case the applicant shall have been found guilty by administrative proceedings on complaint made by the inspector of the market and municipal slaughter-house of the violation of any ordinance or regulation adopted to govern labor in the slaughter-house and public market, or of committing any of the following offenses: (a) Selling short-weight meat; (b) defrauding purchasers of meat in any manner; (c) using an axe or any other instrument to sever bones, which damages the fixtures in use; (d) infraction of any sanitary law, ordinance, or regulation in force; (e) using vile or obscene language or committing any immoral act within the establishments where he is working; (f) failing to be present at the weighing of the meat at the time fixed beforehand by the inspector of the municipal market and slaughter-house; (g) failing to be present at the hour previously fixed by said inspector for the slaughter of cattle in accordance with the ordinance governing the same; (h) having been convicted by a court of competent jurisdiction of any crime involving moral turpitude."

In accordance with said section 3 as amended, which empowers the defendant mayor to refuse to issue a license, as in the present case, when the petitioner has been found guilty, in administrative proceedings, of selling short-weight meat or of defrauding purchasers of meat in any way, or of an infraction of any ordinance or regulation adopted for the

purpose of regulating operations in the slaughter-house and market, and in view of the fact that the plaintiff, now the petitioner, had been found guilty prior to his application of selling short-weight meat in violation of the aforesaid section 3, the defendant mayor had a perfect right to exercise as he did his discretional power in not granting the plaintiff petitioner the license in question.

7. Moreover, the defendant alleges that the discretional power granted him by section 3, which was in force at the time the plaintiff's license was revoked, to determine what reasons are sufficient to justify the revocation of a license or the refusal to issue a new license, with the object of improving the public service, cannot be limited by the judicial action, for, in the first place, the same degree of certainty is not required with regard to the guilt of a person charged in an administrative proceeding as would be necessary in a criminal action, and a person may be innocent of a crime for lack of criminal intent and still be guilty of the offense charged under administrative proceedings either by reason of negligence on his part or for some other reason.

A day having been set for the hearing, the parties appeared and the testimony was taken. The evidence of the petitioner consisted of the correspondence he had had with the mayor relative to his efforts to be allowed to work as a butcher, included in one of the documents being a certificate of his acquittal in the municipal court, and of the testimony of the witness Arroyo Vázquez, that the petitioner was the same person against whom he had made the complaint and who previously worked as a butcher but does not now. The evidence of the defendant consisted of the testimony of the mayor and of the municipal secretary and of the administrative proceedings held by reason of the complaint made against the petitioner. Said proceedings, introduced for the only purpose of showing that the investigation had been held, contains the complaint; the order directing an investigation; the letter addressed to the petitioner summoning him to ap-

pear at the investigation; a similar summons to the witnesses; the testimony of five witnesses given in the presence of the accused, and the decision of the mayor. After the evidence of the defendant had been concluded, the petitioner introduced the witness Alfonso Pizarro, who testified that sometimes on account of a defect in the scales short-weight meat might be sold contrary to the intention of the butcher, and he cited some examples.

In view of the allegations and the evidence and ·after an examination of the briefs filed by both parties, the district court rendered final judgment refusing to issue the writ of *mandamus*. From this decision of the court, rendered on March 3, 1913, the petitioner took the present appeal.

*Mandamus* is a high prerogative writ issuing out of the Supreme Court or district courts of Porto Rico, in the name of The People of Porto Rico, directed to any natural person, persons, company or corporation, or inferior court of judicature within its jurisdiction, requiring them to do some particular act therein specified and which appertains to their office or duty. It confers no new authority and the party to be coerced must have the power to perform the act. Section 1 of the act establishing the writ of *mandamus*. Acts of 1903, p. 113.

"*Mandamus* is an action or judicial proceeding of a civil nature, extraordinary in the sense that it can be maintained only when there is no other adequate remedy, prerogative in its character to the extent that the issue of both the alternative and the peremptory or final command is discretionary, to enforce only clear legal rights, and to compel courts to take jurisdiction or proceed in the exercise of their jurisdiction, or to compel corporations, public and private, and public boards, commissions, or officers, to exercise their jurisdiction or discretion and to perform ministerial duties, which duties result from an office, trust, or station, and are clearly and peremptorily enjoined by law as absolute and official." 26 Cyc., 139, and cases there cited.

If we examine the pleadings and the evidence in the light of the provisions of law in force and of the jurisprudence

of the courts summarized by Cyc. in the paragraph above transcribed, it becomes evident that ·the District Court of Guayama properly exercised its discretion in refusing to issue the writ of *mandamus* applied for by the appellant, Ortiz.

Neither the nullity nor the validity of the municipal ordinance is involved in this case. The petitioner accepted the provisions thereof and by his acts acknowledged its validity.

In view of the manner in which the issue has been raised and the nature of the remedy chosen by the ·petitioner himself, he would have to show that the mayor was in duty bound to issue a new license to the petitioner in order that his petition might prosper.

The allegations and the evidence show that the ordinances whose pertinent provisions are transcribed herein were in force in the municipality of Guayama; that the petitioner, who was a duly licensed butcher and actively engaged as such, was charged with selling short-weight meat; that the mayor, with the previous knowledge and attendance of the petitioner, made a full investigation and reached the conclusion that the petitioner was guilty and thereupon revoked his license, from which decision of the mayor the petitioner took no appeal whatever; that some days afterwards the petitioner asked the mayor to renew his license on the ground that he had been acquitted by the municipal court of the same offense with which he had been charged before the mayor, which the latter refused to do.

From these facts the conclusion cannot be reached that the mayor had no alternative but to issue a new license to the petitioner. The judgment of the municipal court served to acquit the accused and to free him from all criminal responsibility, but the mayor was under no absolute obligation to substitute the conclusion reached by him after a direct examination of the evidence introduced in the administrative investigation by that of the municipal judge. And in this regard we will say that the petitioner himself admitted during the administrative investigation that the meat which he sold was

short 100 grams, but alleged that this was not due to any fault on his part but to a defect in the scales. It was held in the case of the *City of New York* v. *Biffle,* 91 N. Y. Sup., 737, cited in Kerr's Penal Code, paragraph 553, that

"Under ordinance prescribing penalty for using incorrect scales, fact that scales became out of balance because wrong pans were put in them after cleaning does not constitute defense, purpose of ordinance being to prevent purchasers from getting underweight, and purchaser will be just as effectively cheated by light scales, whether resulting from imperfection in scales, or from some one tampering with them, or by some one mixing up pans."

For the foregoing reasons the appeal should be dismissed and the judgment appealed from affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary, Wolf and Aldrey concurred.